IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. CARL | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 09-3990 |
| | : | |
| WESTERN-SOUTHERN LIFE | : | |
| INSURANCE COMPANY | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                            **September 30, 2010**

Defendant Western-Southern Life Insurance Company (Western-Southern) asks this Court

to dismiss Plaintiff Thomas J. Carl's Amended Complaint alleging employment discrimination

pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the reasons set forth herein, the Court

will grant the motion.

**FACTS**[2]

Western-Southern hired Carl as a Sales Representative in October 2004 and promoted him

---

[1] Carl sues Western-Southern, his former employer, for discriminating against him based on his religion, national origin, disability, ancestry, and ethnicity in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. § 951 et seq., and 42 U.S.C. § 1981.

[2] When considering a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept as true the well-pleaded factual allegations of the Amended Complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  This Court may also consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents attached as exhibits to the motion to dismiss, if the plaintiff's claims are based on such documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  In an employment discrimination case, a court may consider administrative documents, such as a plaintiff's charge filed with the Equal Employment Opportunity Commission (EEOC), without converting the motion to dismiss to a motion for summary judgment. *Wormack v. Shinseki*, No. 09-916, 2010 WL 2650430, at *1 n.1 (W.D. Pa. July 1, 2010).

to the position of Sales Manager the following month. In September 2005, Carl returned to a Sales Representative position, which he held until February 4, 2006, when he was "constructively discharged." Am. Compl. ¶¶ 42-43. After Carl returned to a Sales Representative position, he was discriminated against and harassed by Abdullah Parviz Pezeshkian, the Western-Southern District Sales Manager who supervised Carl.

On September 28, 2006, Carl filed a Charge of Discrimination (Charge) with the EEOC, alleging he had been subjected to discrimination based on religion, national origin, and disability, as well as retaliation, during the period from November 1, 2004, through February 4, 2006. Am. Compl. ¶ 44; Def.'s Mot. to Dismiss Am. Compl. Ex. D. The Charge listed Carl's address as 8592 Old Lind Road, Philadelphia, PA 19128, *id.*, and was cross-filed with the Pennsylvania Human Relations Commission (PHRC), Am. Compl. ¶ 44.

On March 17, 2007, the EEOC issued a Dismissal and Notice of Rights (Notice, also known as a right-to-sue letter) to Carl at the 8592 Old Lind Road address listed on his Charge, notifying him the EEOC was closing its file on his Charge and advising him of his right to file a lawsuit. Def.'s Mot. to Dismiss Am. Compl. Ex. E. The Notice also advised Carl his lawsuit must be filed within 90 days from his receipt of the Notice or his right to sue would be lost. *Id.* Although Carl acknowledges the Notice was sent, he alleges he did not receive it because the street name in the address was incorrect by one letter. Am. Compl. ¶ 45. Carl asserts he lives at 8592 Old *Line* Road, not 8592 Old *Lind* Road, the address listed on his Charge. *Id.* On April 26, 2007, the PHRC sent Carl a letter advising him it had closed his case. Def.'s Mot. to Dismiss Am. Compl. Ex. F. Carl alleges he did not receive a copy of this letter, which was also sent to the 8592 Old Lind Road address listed on his EEOC Charge. Am. Compl. ¶ 46.

Carl did not hear anything about the Charge he filed in September 2006 until April 2009, when the EEOC sent him a letter regarding the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009) (codified at 42 U.S.C. § 2000e-5(e)(3)) (Ledbetter Act). On June 30, 2009, the EEOC issued a second Notice to Carl pursuant to the Ledbetter Act. Am. Compl. Ex. A. In its letter accompanying this new Notice, the EEOC explained it had contacted individuals who had "filed Charges with EEOC, including a wages issue, and for which the individual may have been affected by the Supreme Court's decision in the *Ledbetter v. Goodyear Tire and Rubber Company* case (which was reversed by the Lilly Ledbetter Fair Pay Act)." *Id.* The letter went on to state the EEOC had determined Carl was eligible to receive "a new issuance of a Notice of Right to Sue" based on Carl's response to an EEOC questionnaire in which Carl indicated he was impacted by the *Ledbetter* decision and as a result did not file a lawsuit based upon his Charge of Discrimination. *Id.*

On September 1, 2009, Carl filed a Complaint in this Court, asserting claims for discrimination and harassment based on national origin, disability, and religion pursuant to Title VII, the ADA, and the PHRA, and also asserting state law claims for negligent and intentional infliction of emotional distress. Western-Southern filed a motion to dismiss the Complaint, and on January 21, 2010, this Court granted the motion in part and dismissed Carl's negligent and intentional infliction of emotional distress claims. As to Carl's discrimination claims, however, this Court denied the motion without prejudice to reassertion and granted Carl leave to file an amended complaint. On February 4, 2010, Carl filed his Amended Complaint, which the instant motion seeks to dismiss.

3

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating such a motion, the district court first should separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950).

Western-Southern argues Carl's Title VII and ADA claims are time-barred because Carl failed to file his Complaint within 90 days of his presumed receipt of the EEOC's first Notice and because the Ledbetter Act did not revive those time-barred claims. Western-Southern makes a similar statute of limitations argument as to Carl's PHRA claim based on Carl's failure to file his Complaint within two years after the date the PHRC sent Carl a letter notifying him it was closing his case. Western-Southern further argues Carl's § 1981 claim should also be dismissed because he has alleged a claim for discrimination based on national origin, which is not cognizable under § 1981. Carl responds his claims are timely because he never received the EEOC's first Notice or the PHRC's letter, both of which were sent to the wrong address, and the statute of limitations did not begin to run until he received the new Notice the EEOC issued pursuant to the Ledbetter Act. Carl further argues even if his claims were time-barred, the Ledbetter Act revived them. Finally, Carl asserts he has sufficiently alleged a § 1981 claim for discrimination based on his Irish ancestry

and ethnicity.[3]

Discrimination claims under Title VII and the ADA must be filed within 90 days after the plaintiff receives notice of the EEOC's dismissal of the claim. 42 U.S.C. § 2000e-5(f)(1); *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 & n.4 (3d Cir. 2003). This 90-day limitations period generally begins to run on the date the plaintiff receives a right-to-sue letter from the EEOC. *Id.* at 115 n.14. In some instances, however, a right-to-sue letter may be deemed received even though the plaintiff did not actually see it. *Id.* at 115 n.15 (citing with approval "precedent in other circuits holding that a notice letter correctly delivered to a complainant's residence or postal box constitutes notice even though the complainant may not have seen the notice him or herself at the time of delivery"). Absent evidence to the contrary, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).

In determining whether a right-to-sue letter may be deemed received notwithstanding the plaintiff's assertion he never saw it, courts have considered the degree to which the plaintiff himself is responsible for his own failure to receive the letter. In *St. Louis v. Alverno College*, 744 F.2d 1314 (7th Cir. 1984), for example, the Seventh Circuit dismissed a Title VII claim as barred by the 90-day limitations period, even though the plaintiff never actually received the EEOC's right-to-sue letter, where the EEOC had mailed the letter to a Milwaukee address from which the plaintiff had moved.

---

[3] Western-Southern also argues all of Carl's claims are barred by the six-month statute of limitations to which Carl agreed in his employment contracts for "any action or suit relating to [his] employment with Western-Southern," and Carl's Title VII, ADA, and PHRA claims should be dismissed because he has failed to allege a plausible claim for discriminatory compensation under the pleading standards of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Because dismissal is warranted on other grounds, this Court need not address these argument.

Because the plaintiff had failed to formally notify the EEOC of his change of address, as required

by EEOC regulations, the court held the 90-day limitations period "began running on the date the

notice was delivered to the most recent address plaintiff provided the EEOC." *Id.* at 1316-17. The

court distinguished the plaintiff's situation from factual scenarios in which the doctrine of

constructive receipt is inapplicable because the plaintiff's failure to receive actual notice is "through

no fault of [his] own." *Id.* In contrast, the plaintiff's failure to tell the EEOC he had moved "was

not an event beyond his control." *Id.* at 1317. Although the Third Circuit has not addressed the

issue, several other Circuits have also held the 90-day limitations period starts to run when delivery

of a right-to-sue letter is attempted at the address on file for the plaintiff with the EEOC, even if that

address proves to be incorrect.[4]

The reasoning of these cases applies equally here. Carl alleges he never received the EEOC's

first Notice because it was addressed incorrectly. As noted, however, the Notice was addressed to

Carl at 8592 Old Lind Road, Philadelphia, PA 19128, the same address listed for Carl on his Charge

of Discrimination. Although the address apparently contained a typographical error, Carl signed the

Charge of Discrimination declaring "under penalty of perjury that the above is true and correct."

Def.'s Mot. to Dismiss Am. Compl. Ex. D. Just as it is reasonable to require a plaintiff "to shoulder

the 'de minimus' burden of notifying the EEOC of his change of address," *Zillyette v. Capital One*

---

[4] *See Vogel v. Am. Home Prods. Corp. Severance Pay Plan*, No. 96-2674, 1997 WL 577578, at
*3 (4th Cir. Sept. 17, 1997); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997);
*Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989); *Hunter v. Stephenson Roofing,
Inc.*, 790 F.2d 472, 475 (6th Cir. 1986); *cf. Lewis v. Connors Steel Co.*, 673 F.2d 1240, 1243
(11th Cir. 1982) (holding plaintiff who failed to advise the EEOC of address changes "should not
be heard to complain that he did not receive the letter delivered to the last address known to the
EEOC, unless he can show . . . that other fortuitous circumstances or events beyond his control
intervened, and that he through no fault of his own failed to receive the suit letter" (internal
quotation marks and citation omitted)).

*Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999), it is also reasonable to require a plaintiff to ensure

the address listed on his Charge of Discrimination is accurate, *see* 29 C.F.R. § 1601.7 ("The person

making the charge . . . must provide the Commission with the name, address and telephone number

of the person on whose behalf the charge is made."). Because Carl failed to do so, the Court cannot

conclude his failure to receive the Notice was due to no fault of his own. *Blakley v. Kansas City,*

*Mo. Sch. Dist.*, No. 04-0555, 2005 WL 2475730, at *4 (W.D. Mo. Oct. 6, 2005) ("Plaintiff cannot

complain about failing to receive the [EEOC's notice] when it was mailed to the address provided

by him, even if he accidentally provided the wrong address."), *aff'd*, 217 F. App'x 572 (8th Cir.

2007). Therefore, the 90-day limitations period began to run three days after the EEOC mailed the

first Notice on March 16, 2007. Because Carl did not file his Complaint until September 1, 2009,

nearly two and a half years after he was presumed to have received the Notice, his Title VII and

ADA claims are time-barred.[5]

Carl also argues his non-receipt of the first Notice is an "equitable reason" his claims should

not be dismissed. To the extent Carl seeks to invoke the doctrine of equitable tolling, the Court finds

the doctrine inapplicable. The three principal situations in which equitable tolling is appropriate are:

(1) "when the defendant has actively misled the plaintiff"; (2) "when the plaintiff in some

extraordinary way was prevented from asserting her rights"; and (3) "when the plaintiff timely

---

[5] A similar analysis applies to Carl's PHRA claim, which Carl was required to file "within two
years after the date of notice from the Commission closing the complaint." 43 Pa. Stat. Ann.
§ 962(c)(2). The PHRC sent Carl a letter notifying him his case was closed on April 26, 2007,
addressed to the same 8592 Old Lind Road address listed on his EEOC Charge. Ordinarily, the
two-year limitations period begins to run on the date of the PHRC's notice. *See Morrison v.*
*Nat'l City Home Loan Serv., Inc.*, No. 07-99, 2007 WL 4322329, at *2 (W.D. Pa. Dec. 7, 2007).
Because Carl failed to ensure the address on file with the EEOC was correct, his allegation he
never received the PHRC's letter does not provide a reason to toll the limitations period.

asserted her rights in the wrong forum." *Seitzinger*, 165 F.3d at 240 (internal quotation marks and citation omitted). Carl's argument does not implicate the first and third situations. The second situation is also inapplicable, as Carl's non-receipt of the Notice was the result of his own failure to ensure his address was correct on his Charge of Discrimination. *See Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 120 (1st Cir. 2009) (upholding the district court's decision not to apply equitable tolling to a claimant who failed to file a timely complaint because he never received the EEOC's dismissal notice due to his failure to file a change of address with the EEOC).

The Court also concludes the Ledbetter Act does not revive Carl's Title VII and ADA claims. The Ledbetter Act amended 42 U.S.C. § 2000e-5(e) to state:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation . . . , when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). By specifying the time when an unlawful employment practice with respect to compensation discrimination occurs, the Ledbetter Act affects the time for filing a charge of discrimination with the EEOC. *See id.* § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ."). It does not purport to expand the 90-day period in which to file a complaint after the EEOC has addressed such a charge. *See Glover v. Sitel Corp.*, No. 09-597, 2010 WL 1292146, at *1 (W.D. Wis. Mar. 29, 2010) (holding EEOC's second right-to-sue letter pursuant to the Ledbetter Act did not "restart the clock" for filing a complaint, as the Act "relates to the time for filing *charges* with the Commission, not the time for filing a complaint after the commission has addressed the charges"

8

(internal quotation marks, alterations, and citations omitted)).

In addition to his Title VII, ADA, and PHRA claims, Carl asserts a claim pursuant to § 1981, which forbids "all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). For purposes of § 1981, racial discrimination includes "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics," *id.* at 613, but does not include discrimination based solely on a person's national origin.[6] While the distinction between discrimination based on "ancestry or ethnic characteristics" and "place or nation of . . . origin" is "not a bright one," *Al-Khazraji*, 481 U.S. at 614 (Brennan, J., concurring), the Third Circuit has held the former category of discrimination must be based on the plaintiff's "objective appearance to others, not his subjective feeling about his own ethnicity." *Bennun*, 941 F.2d at 173 ("Discrimination stems from a reliance on immaterial outward appearances that stereotype an individual with imagined, usually undesirable, characteristics thought to be common to members of the group that shares these superficial traits."). Thus, courts in this District have dismissed § 1981 claims in the absence of allegations of any factors other than place of origin (e.g., ethnicity, race, or

---

[6] Although neither the Supreme Court nor the Third Circuit has directly addressed the issue, in his concurring opinion in *Al-Khazraji*, Justice Brennan interpreted the majority opinion "to state only that discrimination based on *birthplace alone* is insufficient to state a claim under § 1981." 481 U.S. at 614 (Brennan, J., concurring). Similarly, the Third Circuit has observed, albeit in dictum, that a discrimination claim based solely on national origin "would not be sufficient for a § 1981 claim under *Al-Khazraji*." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir. 1991). In addition, the majority of the courts in this District which have considered the issue have concluded § 1981 does not encompass discrimination based solely on national origin. *E.g.*, *Bahar v. Nw. Human Servs.*, No. 06-3910, 2007 WL 320256, at *6 (E.D. Pa. Jan. 30, 2007) (collecting cases); *Beaubrun v. Inter Cultural Family*, No. 05-06688, 2006 WL 1997371, at *4-5 (E.D. Pa. July 13, 2006) (same). This Court agrees with the majority view.

skin color),[7] but have permitted § 1981 claims to go forward where the plaintiff argued he had been

discriminated against "because he possessed . . . characteristics common to Jamaican born persons."

*Holness v. Penn State Univ.*, No. 98-2484, 1999 WL 270388, at *6 (E.D. Pa. May 5, 1999).

Here, Carl alleges his ethnicity is Irish and Western-Southern discriminated against him on

this basis by failing to compensate him as required under his employment contracts. Carl also

alleges his supervisor harassed and insulted him at work by calling him names referring to his Irish

origin such as "Irish rat"; however, the Amended Complaint includes no factual allegations to

suggest Carl possessed any characteristics thought to be common to the Irish "race." Absent such

allegations, Carl has not alleged a "plausible claim for relief" under § 1981, and his § 1981 claim

must therefore be dismissed. *See Iqbal*, 129 S. Ct. at 1950.

Because Carl's Title VII, ADA, and PHRA claims are time-barred and because Carl has

failed to allege a plausible § 1981 claim, this Court will grant Western-Southern's Motion to Dismiss

Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12.

An appropriate order follows.

BY THE COURT:

                Juan R. Sánchez
                Juan R. Sánchez, J.

---

[7] *Hassan v. Nw. Human Servs.*, No. 06-3711, 2007 WL 510065, at *6 (E.D. Pa. Feb. 13, 2007); *see also Beaubrun*, 2006 WL 1997371, at *5 (dismissing a § 1981 claim based on national origin when the complaint alleged discrimination based on the plaintiff's "Haitian descent" but did not allege discrimination because of race or skin color).